**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

RYAN O'DELL,                                        :
                                                    :
                    Plaintiff,                      :    Civil Action No. 1:21-cv-10489DF
                                                    :
v.                                                  :
                                                    :    **COMPLAINT FOR VIOLATIONS OF**
MOMENTIVE GLOBAL INC., SUSAN L.                     :    **SECTIONS 14(a) AND 20(a) OF THE**
DECKER, DAVID EBERSMAN, DANA L.                     :    **SECURITIES EXCHANGE ACT OF**
EVAN, RYAN FINLEY, ERIKA H. JAMES,                  :    **1934**
ALEXANDER J. LURIE, SHERYL                          :
SANDBERG, BENJAMIN C. SPERO, BRAD                   :    **JURY TRIAL DEMANDED**
SMITH, and SERENA WILLIAMS,                         :
                                                    :
                    Defendants.                     :
--------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.       This is an action brought by Plaintiff against Momentive Global Inc. ("Momentive

or the "Company") and the members Momentive board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with

the proposed acquisition of Momentive by Zendesk, Inc. ("Zendesk") and its affiliates.

2.       Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Registration Statement on Form S-4

(the "Registration Statement") to be filed on December 6, 2021 with the United States Securities

and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Milky Way Acquisition Corp. ("Merger Sub"), a wholly owned subsidiary of Zendesk, will merge with and into Momentive with Momentive surviving the merger and becoming a wholly owned subsidiary of Zendesk (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Momentive common share issued and outstanding will be converted into the right to receive 0.225 of a share of Zendesk common stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked Momentive stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Allen & Company LLC ("Allen & Company") and J.P. Morgan Securities LLC ("J.P. Morgan" and with Allen & Company, the "Financial Advisors") in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Momentive stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Momentive common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Susan L. Decker has served as a member of the Board since 2017.

11.     Individual Defendant David Ebersman has served as a member of the Board since 2015 and is the Chairman of the Board.

12.     Individual Defendant Dana L. Evan has served as a member of the Board since 2012.

13.     Individual Defendant Ryan Finley has served as a member of the Board since 1999.

14.     Individual Defendant Erika H. James has served as a member of the Board since 2018.

15.     Individual Defendant Alexander J. Lurie has served as a member of the Board since 2009 and is the Company's Chief Executive Officer.

16.     Individual Defendant Sheryl Sandberg has served as a member of the Board since 2015.

17.     Individual Defendant Benjamin C. Spero has served as a member of the Board since 2009.

18.     Individual Defendant Brad Smith has served as a member of the Board since 2017.

19.     Individual Defendant Serena Williams has served as a member of the Board since 2017.

20.     Defendant Momentive is incorporated in Delaware and maintains its principal offices at One Curiosity Way, San Mateo, California 94403.  The Company's common stock trades on the New York Stock Exchange under the symbol "MNTV."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     <u>**The Proposed Transaction**</u>

23.     Momentive provides software solutions that help companies turn stakeholder feedback into action in the United States and internationally. It offers survey software products that enable customers to measure, benchmark, and act on stakeholder feedback; GetFeedback CX platform, which enables companies to engage and retain their customers based on the ability to

continuously listen and act on digital feedback; GetFeedback Digital provides continuous and in-the-moment customer feedback from a company's website, web apps, and mobile apps; GetFeedback Direct that enables survey deployment to company's customers through email and SMS; and GetFeedback Complete, an end-to-end customer experience solution that combines GetFeedback Digital and GetFeedback Direct. The Company also provides SurveyMonkey Audience, which enables organizations to collect and analyze real-time actionable data from targeted panelists; Expert solutions offers a suite of pre-built market research software modules, such as ad and video creative, product concept, packaging and logo design, brand name, and messaging and claims analysis for customers to test product and marketing concepts; TechValidate, a marketing content automation solution; SurveyMonkey Apply, an application management solution; and Wufoo that helps users create web and mobile forms, collect file uploads, and receive online payments. It serves financial services, internet, technology, healthcare, media and entertainment, consumer goods and retail, transportation and logistics, government agencies, manufacturing, energy, education, professional services, and non-profit organizations. The Company was formerly known as SVMK Inc. and changed its name to Momentive Global Inc. in June 2021. Momentive was founded in 1999 and is headquartered in San Mateo, California.

24.     On October 28, 2021, Momentive and Zendesk jointly announced that they had entered into a proposed transaction:

> SAN FRANCISCO & SAN MATEO, Calif.--(BUSINESS WIRE)--Zendesk (NYSE: ZEN) and Momentive (NASDAQ: MNTV) have entered into a definitive agreement under which Zendesk will acquire Momentive, including its iconic SurveyMonkey platform. The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021.

Zendesk expects the combination to be growth accretive in its first full operating year and accelerate Zendesk's revenue plan to $3.5 billion in 2024, one year ahead of its previous target. The companies' respective sizable customer bases and complementary capabilities are expected to provide significant opportunity for joint product adoption and increasing Momentive's enterprise traction. Zendesk will reinvest savings from scale efficiencies into compelling growth opportunities to support the combination. Upon the close of the transaction, Momentive CEO Zander Lurie will continue to lead Momentive's strong management team.

"The SurveyMonkey brand is iconic and we've admired their business from afar since the inception of Zendesk. They truly democratized an industry—almost everyone in the world has responded to one of their surveys at some point," said Mikkel Svane, CEO & Founder, Zendesk. "We're very excited to have them join the Zendesk mission along with Momentive's market research and insights products and together create a powerful new Customer Intelligence company. We will deliver a rich, colorful picture of every customer so businesses really understand their customers and can build more authentic relationships."

"We look forward to combining with Zendesk to advance our mission and accelerate our long-term growth strategy," said Zander Lurie, CEO, Momentive. "This is a testament to the strength of our agile products and talented team. Zendesk and Momentive share a culture centered around our people, our communities and the customers we serve. The synergies between our companies are proximate and compelling. We are uniquely positioned to make Customer Intelligence a reality while delivering significant value for our shareholders."

**Acquisition to Create Powerful New Customer Intelligence Company**

In today's digital-first economy, it is imperative to build more meaningful relationships with customers. Meaning comes from a deep understanding of the customer and their experiences. Although businesses often have an endless supply of data, they lack actionable and personalized customer intelligence. Instead, businesses are left with a picture of the customer that is one dimensional, impersonal and incomplete.

Zendesk pioneered the ability to respond to what customers *say* and *do*, making it easier to deliver superior customer

service. Momentive is a leader in capturing how customers *think* and *feel*, helping companies make critical decisions quickly and confidently.

With Momentive, Zendesk will create what businesses really need—a customer intelligence company that connects what customers say and do, with how they think and feel. The combination will give businesses the ability to:

- **Listen to your customers**: Collect critical information about customer needs, experiences and expectations
- **Develop a rich picture:** Bring a customer into focus by combining transactional data with market research and insights for the context to truly understand them
- **Act on insights**: Empower teams to take action with the full breadth of data about their customers as well as feedback and market insights to improve customer interactions

**Transaction Terms**

Following a comprehensive review, the boards of directors of Zendesk and Momentive have approved the transaction.

The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021. Upon closing of the transaction, Zendesk stockholders will own approximately 78% of the combined company and Momentive stockholders will own approximately 22% of the combined company. The transaction, which is anticipated to close in the first half of 2022, is subject to approval by Zendesk stockholders and Momentive stockholders, the receipt of required regulatory approvals and other customary closing conditions. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

Zendesk has published a presentation to provide an overview of the transaction, available on both Zendesk and Momentive's investor relations websites. Additional details and information about the terms and conditions of the transaction will be available in Current Reports on Form 8-K to be filed by Zendesk and Momentive with the Securities and Exchange Commission.

**Quarterly Financial Results**

In separate press releases issued today, Zendesk announced financial results for the third quarter of 2021 and Momentive announced preliminary results for its third quarter of 2021. Momentive will issue a press release to share its full third quarter financial results on November 9, 2021.

**Conference Call and Webcast**

Today at 2:00 p.m. (PT) / 5:00 p.m. (ET), Zendesk will host a conference call to discuss its Q321 earnings and the transaction. The live video webcast can be accessed through Zendesk investor relations website at https://investor.zendesk.com. A replay of the webcast will be available for 12 months.

**Advisors**

Goldman Sachs & Co. LLC is serving as lead financial advisor and Centerview Partners LLC is also serving as financial advisor to Zendesk. Hogan Lovells US LLP is serving as legal counsel to Zendesk. Allen & Company LLC and J.P. Morgan Securities LLC are serving as equal lead financial advisors and Wilson Sonsini Goodrich & Rosati Professional Corporation is serving as legal counsel to Momentive.

\* \* \*

25.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Momentive's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Registration Statement**

26.     On December 6, 2021, Momentive filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.

The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27.     The Registration Statement fails to provide material information concerning financial projections by Momentive management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Zendesk Projections" and the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that Momentive management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Zendesk Projections and the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial

metrics: Non-GAAP Operating Income and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.    When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31.    Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning the Financial Advisors' Financial Analysis*

32.     With respect to Allen & Company's *Selected Public Companies Analyses* for Momentive and Zendesk, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Allen & Company in the analyses.

33.     With respect to Allen & Company's *Selected Precedent Transactions Analysis* for the Company, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by Allen & Company in the analysis.

34.     With respect to Allen & Company's *Discounted Cash Flow Analysis* for the Company, the Registration Statement also fails to disclose: (i) the implied terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 3.0% to 3.5%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.0% to 9.25%.

35.     With respect to Allen & Company's *Discounted Cash Flow Analysis* for Zendesk, the Registration Statement also fails to disclose: (i) the implied terminal values for Zendesk; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 3.0% to 3.5%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 7.25% to 8.5%.

36.     With respect to J.P. Morgan's *Selected Public Trading Multiples Analysis* for Momentive and Zendesk, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by J.P. Morgan in the analyses.

37.     With respect to J.P. Morgan *Discounted Cash Flow Analysis* for the Company, the Registration Statement also fails to disclose: (i) the implied terminal values for the Company; (ii)

the inputs and assumptions underlying the use of terminal growth rates of 3.0% to 4.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.0% to 10.00%; (iv) Momentive's fully diluted shares outstanding as of September 30, 2021.

38.     With respect to J.P. Morgan *Discounted Cash Flow Analysis* for Zendesk, the Registration Statement also fails to disclose: (i) the implied terminal values for Zendesk; (ii) the inputs and assumptions underlying the use of terminal growth rates of 3.0% to 4.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.25% to 9.25%; (iv) Zendesk's fully diluted shares outstanding as of September 30, 2021.

39.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.    Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Allen & Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44.    Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

45.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>**COUNT II**</u>

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Momentive within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Momentive, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Momentive, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Momentive, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

50.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 8, 2021                          **MELWANI & CHAN LLP**

                                        By:   /s *Gloria Kui Melwani*
                                              Gloria Kui Melwani (GM5661)
                                              1180 Avenue of Americas, 8th Fl.
                                              New York, NY 10036
                                              Telephone: (212) 382-4620
                                              Email: gloria@melwanichan.com

                                              *Attorneys for Plaintiff*